IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **DENISE HAMLETT** §<br>§<br>*Plaintiff*, §<br>§<br>**v.** §<br>§<br>**TRANS AMERICAN INFORMATION** §<br>**SYSTEMS, INC. d/b/a MASTEK** §<br>§<br>*Defendant*. § | CIVIL ACTION NO. _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Denise Hamlett ("Plaintiff" or "Hamlett"), files this Original Complaint against Defendant Trans American Information Systems, Inc. d/b/a Mastek (referred to as "Defendant" or "TAIS/Mastek"), for violating federal law. The cause of action and summary of claims relating thereto are addressed below:

### I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff Denise Hamlett is currently a citizen and resident of the State of Arizona.

2. Defendant Trans American Information Systems, Inc. d/b/a Mastek is a corporation, authorized to do business, and is doing business, in the State of Texas with its main corporate headquarters in Dallas County, Texas. It can be served through its registered agent Kapil Malik located at 5321 North MacArthur Blvd. #1063, Irving, TX 75038 or wherever he may be found.

3. The court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §1331 & §1343. Venue exists in this district and division as detailed in 28 U.S.C. §1391, as the events forming the basis of suit occurred in Addison, Texas.

## II. FACTUAL BACKGROUND

4.     Hamlett was formerly employed by (TAIS) as the Vice President of Staffing Client Services & Talent Management. In 2017, Mastek purchased TAIS.

5.     Although the company is based in Texas, Hamlett worked remotely in Arizona.

6.     Hamlett is a Caucasian American female. The majority of the leadership-level employees at Mastek are South Asian/Indian men.

7.     At the time of her termination, Hamlett was the only Caucasian American female that held a VP-level title.

8.     Throughout her tenure at TAIS/Mastek, Hamlett was often referred to as the "token white girl" by senior-level employees.

9.     After the sale to Mastek, Hamlett discovered that she was not only the "token white girl," but she was also being treated differently because of her race/national origin and gender in that South Asian/Indian men who were on her same level were offered benefits of employment that Plaintiff was not offered.

10.    For example, South Asian/Indian men were offered profit sharing and a payout of the sale to be paid over several years. Hamlett was not offered profit sharing or a payout of the sale. TAIS/Mastek also provided these men with stock options, cell phone reimbursements and other benefits that Hamlett was never offered or received. While she was offered a corporate credit card, her expenses received a higher level of scrutiny than her South Asian/Indian male counterparts.

11.    Additionally, Hamlett was often excluded on leadership calls that specifically related to her department and team for no other reason.

12.    In late August 2019, TAIS/Mastek changed Hamlett's commission structure retroactively, which significantly reduced the amount of commission she was due. None of the South Asian/Indian men on her same level had their commission structures changed.

13. After Hamlett reported this issue, she received the past commissions that were due to her, but her commission structure was still changed prospectively which significantly reduced my earnings going forward. Again, none of the South Asian/Indian men on her same level had their commission structures changed.

14. In late 2019, Hamlet discovered that TAIS/Mastek was falsifying immigration documentation. For example, TAIS/Mastek brought Indian nationals into the United States for employment purposes, but H-1B employment visas are subject to an annual cap. This visa limit effectively limits business operations and results in competition among international firms for these visas. The H-1B visa is a non-immigrant visa that allows an employer to temporarily employ a foreign national in a "specialty occupation."  TAIS/Mastek represented to the federal government that certain individuals held "specialty occupations" at TAIS/Mastek when they did not in order to maintain their visa status.  Hamlett submitted a complaint to the U.S. Citizenship and Immigration Services ("USCIS") in late 2019, and she reported the false immigration documentation to Human Resources in January 2020. Human Resources acknowledged that this was an illegal act.

15. In February 2020, Hamlett reported to Human Resources that she was being treated differently because of her race and gender. In response, the Human Resources representative stated that "male Indians stick together," that Hamlett was the wrong "color," and that she would not be offered what the Indian males were being offered.

16. On or about April 20, 2020, after more than ten (10) years of service – Hamlett was terminated from her employment with virtually no warning or indication that she would be terminated. When Hamlett asked why she was being terminated, she was told that "we don't need to get into that." To this day, TAIS/Mastek has not provided Hamlett any reason for her termination.

17. Following her termination, Hamlett attempted to obtain unemployment benefits from the Arizona Department of Economic Benefits. Upon filing, it was discovered that TAIS/Mastek failed to report Hamlett's earnings or pay the Arizona state unemployment tax, which has prevented Hamlett from obtaining any benefits despite her efforts to rectify the problem, in further retaliation from TAIS/Mastek.

18. It is clear that Hamlet was discriminated against and terminated because of her race, national origin, and gender, and because she reported this discrimination to her employer in violation of the Civil Rights Act of 1964 (as amended), 42 U.S.C. §§2000e *et. seq*. ("Title VII"), 42 U.S.C. §1981, and 42 U.S.C. §1981(a). Moreover, Hamlet was terminated in retaliation for engaging in protected activity under the False Claims Act.

### III. CAUSES OF ACTION:
#### A. VIOLATION OF TITLE VII & 42 U.S.C. 1981

19. Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 18 as if fully stated herein.

20. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under the Civil Rights Act of 1964 (as amended), 42 U.S.C. §§2000e *et. seq*. ("Title VII"), 42 U.S.C. §1981, and 42 U.S.C. §1981(a).

21. Plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") alleging race, color, national origin, and gender discrimination and retaliation against Defendant on or about May 18, 2020. Hamlett received A Notice of Right to Sue from the EEOC on January 6, 2021. This lawsuit was filed within ninety (90) days of receipt of the "Dismissal and Notice of Rights" issued by the EEOC.

22. Defendant is considered to be an "employer" as defined by Title VII.

23. Plaintiff is considered to be an "employee" as defined by Title VII.

24. Plaintiff's claims of discrimination, and/or retaliation pursuant to contract under 42 U.S.C. §1981 and 42 U.S.C. §1981(a), are brought pursuant to the requirements and obligations of those statutes and 42 U.S.C. §1983.

25. During the time that Plaintiff was employed by Defendant, she was subjected to race, color, national origin, and gender discrimination and retaliation as defined by Title VII and §1981.

26. As described above, Defendant intentionally and willfully violated Title VII and §1981 by subjecting Plaintiff to race, color, national origin, and gender discrimination and retaliation because she engaged in protected activity as described by Title VII and §1981.

27. Defendant does not have adequate policies or procedures in place to address the discrimination, or retaliation, nor did they implement prompt remedial measures.

28. As a result of Defendant's violations of Title VII and §1981, (as mentioned above), Plaintiff has suffered actual damages in the form of lost wages and benefits. Plaintiff has also suffered mental trauma, loss of enjoyment of life, inconvenience, and other losses.

29. As a result of the willful and intentional violations of Title VII and §1981, Plaintiff requests that she be awarded all actual, compensatory, and punitive damages to which she is entitled, equitable and/or injunctive relief, and attorney fees and costs.

### B. VIOLATION OF FALSE CLAIMS ACT - RETALIATION

30. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 29 as if fully stated herein.

31. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under the FCA.

32. Plaintiff is an employee under 31 U.S. §3730(h).

33. Defendant is an employer under 31 U.S. § 3730(h).

34. As an employee for TAIS/Mastek, Plaintiff is protected from being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" for engaging in protected activity under the FCA, including "efforts to stop one or more violations" believed to violate the FCA.

35. As described above, Defendant intentionally and willfully violated the FCA by discriminating against Plaintiff because of her engagement in protected activity under the FCA.

36. As a result of Defendant's violations of the FCA, Plaintiff has suffered actual damages in the form of lost wages and benefits, (past and future), mental trauma, loss of enjoyment of life, and other recoverable damages.

37. As a result of these willful violations of the FCA by Defendant, Plaintiff requests that she be awarded all damages, to which she is entitled, including any equitable and/or injunctive relief, lost wages, liquidated damages, attorney fees and costs.

### IV. JURY DEMAND

Plaintiff requests a trial by jury on all claims.

## V. PRAYER FOR RELIEF

Wherefore, Plaintiff requests that on final trial, Plaintiff has judgment against Defendant as follows:

a. Judgment against Defendant for actual damages, including lost wages and benefits, the sum to be determined at time of trial;

b. Judgment against Defendant for compensatory damages, (including, but not limited to, mental anguish and loss of enjoyment of life), in the maximum amount allowed by law;

c. Judgment against Defendant for punitive damages in the maximum amount allowed under law;

d. An order that Defendant take such other and further actions as may be necessary to redress Defendant's violation of Title VII, §1981, and the FCA, including injunctive relief;

e. Judgment against Defendant for special damages in the maximum amount allowed by law;

f. Judgment against Defendant for twice the amount of back pay or liquidated damages in the maximum amount allowed by law;

g. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

h. Costs of suit, including attorney's fees and other costs; and

i. The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted by:

*/s/ Megan Dixon*
**Megan Dixon**
State Bar No. 24079901
dixon@l-b-law.com
**BRAZIEL | DIXON, LLP**
1910 Pacific Ave. Ste. 12000
Box 220
Dallas, Texas 75201
Tel:  (214) 749-1400
Fax:  (214) 749-1010

**ATTORNEY FOR PLAINTIFF**