IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **DENISE HAMLETT** § § *Plaintiff*, § § **v.** § § **TRANS AMERICAN INFORMATION SYSTEMS, INC. d/b/a MASTEK** § § *Defendant*. § | CIVIL ACTION NO. 3:21-CV-775-S |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Denise Hamlett ("Plaintiff" or "Hamlett"), files this First Amended Complaint against Defendant Trans American Information Systems, Inc. d/b/a Mastek (referred to as "Defendant" or "TAIS/Mastek"), for violating federal law. The cause of action and summary of claims relating thereto are addressed below:

### I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff Denise Hamlett is currently a citizen and resident of the State of Arizona.

2. Defendant Trans American Information Systems, Inc. d/b/a Mastek is a corporation, authorized to do business, and is doing business, in the State of Texas with its main corporate headquarters in Dallas County, Texas. Defendant has been served.

3. The court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §1331 & §1343. Venue exists in this district and division as detailed in 28 U.S.C. §1391, as the events forming the basis of suit occurred in Addison, Texas.

## II. FACTUAL BACKGROUND

4. Hamlett was formerly employed by TAIS/Mastek as the Vice President of Staffing Client Services & Talent Management. In 2017, Mastek purchased TAIS.

5. Although the company is based in Texas, Hamlett worked remotely in Arizona.

6. Hamlett is a Caucasian American female. The majority of the leadership-level employees at Mastek are South Asian/Indian men.

7. At the time of her termination, Hamlett was the only Caucasian American female that held a VP-level title.

8. Throughout her tenure at TAIS/Mastek, Hamlett was often referred to as the "token white girl" by senior-level employees.

9. After the sale to Mastek, Hamlett discovered that she was not only the "token white girl," but she was also being treated differently because of her race/national origin and/or gender, as men, including South Asian/Indian men, who were on her same level were offered benefits of employment that Plaintiff was not offered.

10. For example, men, including South Asian/Indian men, were offered profit sharing and a payout of the sale to be paid over several years. Hamlett was not offered profit sharing or a payout of the sale. TAIS/Mastek also provided men with stock options, cell phone reimbursements and other benefits that Hamlett was never offered or received. While she was offered a corporate credit card, her expenses received a higher level of scrutiny than her South Asian/Indian and male counterparts.

11. Additionally, Hamlett was often excluded on leadership calls that specifically related to her department and team for no other reason.

12. In late August 2019, TAIS/Mastek changed Hamlett's commission structure retroactively, which significantly reduced the amount of commission she was due.  None of the

South Asian/Indian men on her same level had their commission structures changed.

13.     After Hamlett reported this issue, she received the past commissions that were due to her, but her commission structure was still changed prospectively which significantly reduced my earnings going forward. Again, none of the South Asian/Indian men on her same level had their commission structures changed.

14.     In late 2019, Hamlett discovered that TAIS/Mastek was falsifying immigration documentation. For example, TAIS/Mastek brought Indian nationals into the United States for employment purposes, but H-1B employment visas are subject to an annual cap. This visa limit effectively limits business operations and results in competition among international firms for these visas. The H-1B visa is a non-immigrant visa that allows an employer to temporarily employ a foreign national in a "specialty occupation." TAIS/Mastek represented to the federal government that certain employees held "specialty occupations" at TAIS/Mastek when they did not in order to maintain their visa status.

15.     During a conference call in November/December 2019, Hamlett reported to Mastek President Raman Sapra that the application and renewal visa for a former employee was fraudulent. Following this conference call, Hamlett made numerous comments to Sapra refusing to do anything that would be construed to be illegal regarding employees' visas. Specifically, Hamlett refused Human Resources' and Sapra's requests to "change" job titles, start dates, and work locations in order to approve visas. Hamlett refused because this would be providing false and inaccurate information to the federal government. In late 2019, Hamlett submitted a complaint to the U.S. Citizenship and Immigration Services ("USCIS"). She also reported false immigration documentation to Human Resources in January 2020. Human Resources acknowledged that this was an illegal act.

16. In February 2020, Hamlett reported to Human Resources that she was being treated differently because of her race and gender. In response, the Human Resources representative stated that "male Indians stick together," that Hamlett was the wrong "color," and that she would not be offered what the Indian males were being offered.

17. On or about April 20, 2020, after more than ten (10) years of service – Hamlett was terminated from her employment with virtually no warning or indication that she would be terminated. When Hamlett asked why she was being terminated, she was told that "we don't need to get into that."

18. According to the position statement provided by Defendant to the Texas Workforce Commission in September 2020, Defendant claims Sapra made the decision to terminate Hamlett's employment in January 2020 (shortly after her reports of visa fraud and refusal to commit visa fraud) for "unprofessional conduct and performance deficiencies." However, this merely pretextual as the stated reasons are false and unworthy of credence.

19. For example, Hamlett never received any formal or informal "coaching" related to performance from Sapra. Rather, in August 2019, Sapra commended Hamlett's job performance and referred to her work and staffing business as the "savior of the company" and that the project/development side of the business was "going down" in revenue.

20. Defendant claims that it terminated Hamlett because she "refused to facilitate collection of payment from Mastek clients." This is completely false. Hamlett had several discussions with the finance department regarding the "outstanding" accounts receivable and explained each time that the outstanding amount was not from any client but a summary of expenses placed into the staffing department to cover the expenses of the male counterparts in delivery/projects. Hamlett worked with the finance department to identify alleged outstanding accounts receivables, which had been verified as received by Defendant, but continued to show as

outstanding even after providing the necessary documentation and statements. Finally, after numerous requests for information and corrections, Hamlett reconciled nearly $1 million in collected debt that was not appropriately applied.

21. Defendant also stated that it terminated Hamlett's employment because she hired and supervised her daughter without disclosing the familial relationship to Sapra. However, Hamlett's daughter was hired as a subcontractor *prior to* Sapra's employment with Defendant and with full knowledge of the company's previous president. Additionally, numerous men were authorized to have their family members bill Defendant for work without issue, and many of these men submitted false invoices to pay family members for work that was never actually performed.

22. Defendant stated that it terminated Hamlett's employment because she requested access to confidential information regarding other employees. Due to her position, Hamlett had access to and was required to submit documents to facilitate obtaining new clients per her commission structure. This included providing proof of corporate insurance liability, renewal of insurance, renewal or transfer of visa and proof of employment verification and status of employment authorization to Hamlett's business clients. Hamlett had access to these documents for several years and was never advised for her to cease accessing information to facilitate new and renewing contracts with clients. Moreover, Hamlett worked intricately with the previous human resources employee to process visa statuses for field consultants. This access was not out of the ordinary and was expected of Hamlett to meet her goals and objectives.

23. Defendant claimed it terminated Hamlett because she did not meet performance targets for Defendant's 2020 fiscal year, which runs April 1, 2019 to March 21, 2020. These new performance targets were only provided to Hamlett in July 2019, and even so, Hamlett met her performance targets. Defendant intentionally manipulated financial documents to make Hamlett appear less successful than she actually was. For instance, Defendant moved profits from Hamlett's

staffing group to the delivery/projects group, which was led by her male counterparts. This manipulation impacted Hamlett's bonus potential, while increasing the bonus potential for her male counterparts. Defendant also manipulated Hamlett's financial documents by including costs incurred by the delivery/projects group in Hamlett's staffing group's financial analysis. Hamlett had numerous discussions with Sapra and the finance department regarding these manipulations.

24. Following her termination, Hamlett attempted to obtain unemployment benefits from the Arizona Department of Economic Benefits. Upon filing, it was discovered that TAIS/Mastek failed to report Hamlett's earnings or pay the Arizona state unemployment tax, which has prevented Hamlett from obtaining any benefits despite her efforts to rectify the problem, in further retaliation from TAIS/Mastek.

25. Defendant also threatened to file suit against Hamlett for allegedly violating her confidentiality and non-compete agreement after receiving and responding to Hamlett's Charge of Discrimination.

26. It is clear that Hamlett was discriminated and retaliated against because of her race, national origin, and gender, and because she reported this discrimination to her employer in violation of the Civil Rights Act of 1964 (as amended), 42 U.S.C. §§2000e *et. seq*. ("Title VII"), 42 U.S.C. §1981, and 42 U.S.C. §1981(a). Moreover, Hamlett was terminated in retaliation for engaging in protected activity under the False Claims Act.

### III. CAUSES OF ACTION:

### A.  VIOLATION OF TITLE VII & 42 U.S.C. 1981

27.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 26 as if fully stated herein.

28.     Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under the Civil Rights Act of 1964 (as amended), 42 U.S.C. §§2000e *et. seq*. ("Title VII"), 42 U.S.C. §1981, and 42 U.S.C. §1981(a).

29.     Plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") alleging race, color, national origin, and gender discrimination and retaliation against Defendant on or about May 18, 2020.  Hamlett received A Notice of Right to Sue from the EEOC on January 6, 2021.  This lawsuit was filed within ninety (90) days of receipt of the "Dismissal and Notice of Rights" issued by the EEOC.

30.     Defendant is considered to be an "employer" as defined by Title VII.

31.     Plaintiff is considered to be an "employee" as defined by Title VII.

32.     Plaintiff's claims of discrimination, and/or retaliation pursuant to contract under 42 U.S.C. §1981 and 42 U.S.C. §1981(a), are brought pursuant to the requirements and obligations of those statutes and 42 U.S.C. §1983.

33.     During the time that Plaintiff was employed by Defendant, she was subjected to race, color, national origin, and gender discrimination and retaliation as defined by Title VII and §1981.

34.     As described above, Defendant intentionally and willfully violated Title VII and §1981 by subjecting Plaintiff to race, color, national origin, and gender discrimination and retaliation because she engaged in protected activity as described by Title VII and §1981.

35.     Defendant does not have adequate policies or procedures in place to address the discrimination, or retaliation, nor did they implement prompt remedial measures.

36. As a result of Defendant's violations of Title VII and §1981, (as mentioned above), Plaintiff has suffered actual damages in the form of lost wages and benefits. Plaintiff has also suffered mental trauma, loss of enjoyment of life, inconvenience, and other losses.

37. As a result of the willful and intentional violations of Title VII and §1981, Plaintiff requests that she be awarded all actual, compensatory, and punitive damages to which she is entitled, equitable and/or injunctive relief, and attorney fees and costs.

### B. VIOLATION OF FALSE CLAIMS ACT - RETALIATION

38. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 37 as if fully stated herein.

39. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under the FCA.

40. Plaintiff is an employee under 31 U.S. §3730(h).

41. Defendant is an employer under 31 U.S. § 3730(h).

42. As an employee for TAIS/Mastek, Plaintiff is protected from being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" for engaging in protected activity under the FCA, including "efforts to stop one or more violations" believed to violate the FCA.

43. As described above, Defendant intentionally and willfully violated the FCA by discriminating against Plaintiff because of her engagement in protected activity under the FCA.

44. As a result of Defendant's violations of the FCA, Plaintiff has suffered actual damages in the form of lost wages and benefits, (past and future), mental trauma, loss of enjoyment of life, and other recoverable damages.

45. As a result of these willful violations of the FCA by Defendant, Plaintiff requests that she be awarded all damages, to which she is entitled, including any equitable and/or injunctive relief, lost wages, liquidated damages, attorney fees and costs.

## IV. JURY DEMAND

Plaintiff requests a trial by jury on all claims.

## V. PRAYER FOR RELIEF

Wherefore, Plaintiff requests that on final trial, Plaintiff has judgment against Defendant as follows:

a. Judgment against Defendant for actual damages, including lost wages and benefits, the sum to be determined at time of trial;

b. Judgment against Defendant for compensatory damages, (including, but not limited to, mental anguish and loss of enjoyment of life), in the maximum amount allowed by law;

c. Judgment against Defendant for punitive damages in the maximum amount allowed under law;

d. An order that Defendant take such other and further actions as may be necessary to redress Defendant's violation of Title VII, §1981, and the FCA, including injunctive relief;

e. Judgment against Defendant for special damages in the maximum amount allowed by law;

f. Judgment against Defendant for twice the amount of back pay or liquidated damages, and interest on the back pay, in the maximum amount allowed by law;

g. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

h. Costs of suit, including attorney's fees and other costs; and

i. The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted by:

*/s/ Megan Dixon*
**Megan Dixon**
State Bar No. 24079901
dixon@l-b-law.com
**BRAZIEL | DIXON, LLP**
1910 Pacific Ave. Ste. 12000
Box 220
Dallas, Texas 75201
Tel: (214) 749-1400
Fax: (214) 749-1010

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of November, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to the following individual who has been consented in writing to accept this notice as service:

Michael A. McCabe
mmccabe@munckwilson.com
Lauren L. Mitchell
lmitchell@munckwilson.com
Munck Wilson Mandala, LLP
600 Banner Place Tower
12770 Coit Road
Dallas, Texas 75251
(972) 628-3600
(972) 628-3616 (facsimile)

*/s/ Megan Dixon*
**Megan Dixon**